IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAURA C. ROBINSON,                    :
       Plaintiff

                             :

       vs.                            :   CIVIL NO. 1:CV-04-0996

                             :

JOHN E. POTTER, Postmaster
General, United States           :
Postal Service,
       Defendant                       :

M E M O R A N D U M

      The Plaintiff, Laura Robinson, has sued the Defendant, John E. Potter, Postmaster General of the United States Postal Service, for violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* Robinson claims that the Defendant interfered with her FMLA right in violation of 29 U.S.C. § 2615(a)(1)[1], by including FMLA covered dates in the decision to terminate her employment. A bench trial was held on September 12, 2005. What follows constitutes the our findings of fact and conclusions of law.[2]

---

    [1] It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    [2] In her pre-trial memorandum, the Plaintiff states that although she is claiming both interference and discrimination under the FMLA, her claim is really one of interference. Further, there was no evidence produced at trial nor any argument made to support an FMLA discrimination claim.

I.    <u>Findings of Fact</u>

        1. The Postal service has more than fifty employees.
(Stipulated).

        2. Beginning in May, 1998, the Plaintiff, Laura
Robinson, was employed by the United States Postal Service as a
mail handler.  (Robinson testimony, Tr. 6).

        3. Prior to September 26, 2002, the Plaintiff had worked
for the Postal Service for twelve months and for at least 1,250
hours.  She also had enough FMLA time to cover her absences from
October 11, 2002 to November 3, 2002.  (Stipulated).

        4. During her employment with the Postal Service,
Robinson was frequently absent from work.  These absences resulted
in Robinson being subject to various levels of discipline prior to
the time period in question.  These included a letter of warning,
a three-day no time-off suspension, and a fourteen day suspension.
(Def. Ex. 22, 23, 24).

        5. To be considered for leave under the FMLA, an
employee must provide a health care provider's, or doctor's,
report usually done on what is known as a WH-380 Form.

        6. The Postal Service received a WH-380 Form, dated July
8, 2002, from Robinson regarding a period of absence from June 21,
2002, to June 24, 2002.  This absence was due to a history of
asthma and bronchitis.  Her doctor stated that the condition was
chronic, and indicated that Robinson could be intermittently

incapacitated due to the episodic nature of the condition.  (Def. Ex. 7).

7. The Postal Service received a WH-380 Form dated October 8, 2002, regarding Plaintiff's absences occurring between October 1, 2002, to October 15, 2002.  These absences were due to an episode of major depression.  The healthcare provider indicated that Robinson's condition qualified under the FMLA as "absence plus treatment."  It was indicated on the WH-380 Form that because depression can last from six to nine months, Robinson may be recommended to take FMLA leave when she could not function due to her condition.  (Def. Ex. 15).

8. Asthma/bronchitis and depression are serious health conditions and the Postal Service approved absences for these conditions prior to the contested dates.  (Stipulated).

9. A classification of "absence plus treatment" by a health care provider includes not only the immediate absence and treatment but also "any subsequent treatment or period of incapacity relating to the same condition."  (Def. Ex. 7A).

10. Robinson's depression was also classified as an "injury-on-duty" (IOD).  (Def. Ex. 4).

11. Robinson was informed in the various letters requesting certification of her conditions, that the person taking a leave request for an approved FMLA condition should be told that the request was for a "FMLA ON FILE" condition.  (Def. Exs. 5, 9, 11, 13, 14, 16).

12. At some point prior to Robinson's absences beginning on October 11, 2002, Barbara Nicka, the FMLA coordinator, told Robinson that because she had more than one FMLA condition on file, she would have to specify whether the condition she was experiencing was condition number 1, number 2, etc. Nicka indicated the condition would be treated as a new request if this detail was not provided. This requirement was not based on any written policy. (Nicka Testimony, Tr. 161-2, 165, Proctor Testimony, Tr. 191).

13. Robinson requested leave from work on October 11 and 14, 2002, and, according to the leave slips filled out by Marsha Garner, indicated that her request was not related to her IOD or a FMLA condition. (Def. Ex. 1, pp. 128, 131).

14. Robinson testified that she told Garner that these days were IOD and FMLA. We do not find this testimony credible.

15. Robinson requested leave from work on October 19, 20, and 21, 2002, and, according to leave slips, indicated that her request was not related to her IOD but was for a FMLA condition. (Def. Ex. 1, pp. 132, 133, 134).

16. Robinson requested leave from work on October 25, 2002, and, according to the leave slip, indicated that her request was not related to her IOD but was for a FMLA condition. (Def. Ex. 1, p. 138).

17. Robinson requested leave from work on October 27 and 28, 2002, and, according to the leave slips, indicated that her

4

request was not related to her IOD but was for a FMLA condition. (Def. Ex. 1, p. 140).

18. Robinson requested leave from work on November 1, 2, and 3, 2002, and, according to the leave slips, indicated that the request was not related to her IOD but was for a FMLA condition. (Def. Ex. 1, pp. 141, 142, 143).

19. Robinson told the people taking her calls that her FMLA conditions were "on file."  (Robinson Testimony, Tr. 11-2)

20. The absences spanning October 19, 2002, to November 3, 2002, were treated as new requests by Nicka because Robinson did not specify the "condition number" when she called attendance control.

21. Nicka sent Robinson a letter on October 23, 2002, requesting certification for the October 19, 2002, to November 3, 2002, absences.  (Def. Ex. 16).

22. Because Robinson did not return certification to Nicka, the absences from October 19, 2002, to November 3, 2002, were not approved as FMLA absences.  Nicka denied FMLA approval for these absences on November 7, 2002.  (Def. Ex. 17).

23. Following these absences, an attendance control supervisor, John Mills, had a pre-disciplinary meeting with Robinson on November 7, 2002.  He informed her that because of her recent absences, along with seven other absences between May and July, 2002, the Postal Service would take corrective action. (Mills testimony, Tr. 96).

24. Robinson informed Mills that she considered the absences from October 11, 2005, to November 3, 2005, to be FMLA absences. (*Id.* at 97).

25. Mills told Robinson that he would ask the FMLA coordinator about the contested dates prior to taking any action. He spoke with Barbara Nicka and was informed she would deny the dates. (*Id.*)

26. On November 9, 2002, Robinson was given notice that she would be terminated because of her excessive absenteeism, effective December 13, 2002.  The disputed dates were included in the decision to terminate.  (Def. Ex. 25).

27.  Subsequent to making the decision to terminate Robinson, Nicka requested that she re-certify her asthma/bronchitis and depression for absences that occurred after November 9, 2002. (Def. Ex. 18).

28. Mills testified that had the October and November dates been FMLA absences, he would not have considered them in making his decision to recommend Robinson for termination.  He also testified that even if the dates were FMLA protected, he would have recommended that Robinson be terminated based on the absences that occurred from May 2002, to July 2002 and a November 7, 2002, absence that is not disputed.  However, we find this testimony to be unpersuasive as no action was taken until after the October and November dates.  (Mills Testimony, Tr. 99).

29. In November, 2004, Robinson was reinstated at the Postal Service. (Robinson Testimony, Tr. 42).

30. In 2001, Plaintiff earned $19,920.  (Def. Exs. 38 & 42).

31. In 2002, Plaintiff earned $24,207.99. (*Id.*)

32. Defendant paid Plaintiff $425.21 for the final pay period of 2002.  (Def. Ex. 38).

33. Defendant paid Plaintiff $2835.02 for the final two pay periods of 2004.  (*Id.*)

34. The Postal Service employment policy required Plaintiff to mitigate any damages in case of a determination of wrongful termination.  (Def. Ex. 29).

35.  Plaintiff testified that she sought employment in the year following her termination but was unsuccessful.  She provided no corroboration or documentation to support this assertion.  (Robinson Testimony, Tr. 40-2).

36.  From November 2003, to November 2004, Robinson worked as a barmaid.  She worked twenty hours a week and earned $7.00 an hour.  She earned approximately $30.00 in tips during each of her two six-hour shifts, and approximately $50.00 in tips on her eight-hour shift.  This income was not reported to the Internal Revenue Service (IRS).  (Robinson testimony, Tr. 45).

II.   Conclusions of Law

        1. The Defendant interfered with Plaintiff's rights
under the FMLA.

        2. The Defendant is liable to the Plaintiff for lost
wages, pre-judgment and post-judgment interest, and reasonable
attorney's fees and costs.

        3. The Defendant is not liable to the Plaintiff for
liquidated damages.

III.   Discussion

    A.   Notice

        Under the FMLA, an eligible employee is entitled to
twelve work weeks of leave during a twelve month period if the
employee has a serious health condition that prohibits her from
performing the requirements of her job.  29 U.S.C. §
2612(a)(1)(D).  An employee is eligible for leave if she has been
employed by the current employer for at least twelve months and
has worked at least 1250 hours during the previous twelve months.
29 U.S.C. § 2611(2)(A).  If an employee is eligible for FMLA leave
and an employer violates "the [FMLA] or [the FMLA] regulations
[it] constitute[s] interfering with, restraining, or denying the
exercise of rights provided by the [FMLA]."  29 C.F.R. § 825.220.

        The dispute in this case concerns whether the Plaintiff
gave the Postal Service adequate notice of her need to take leave
under the FMLA.  Robinson claims that her October and November

8

absences were FMLA protected and that the Postal Service should
not have considered those dates in making the decision to
terminate.  The Defendant argues that because Robinson failed to
specify the previously approved FMLA condition for which she was
requesting leave, as instructed by Barbara Nicka, the notice she
gave was inadequate and her requests were treated as new
conditions which required certification.  The Defendant maintains
that since she failed to return certifications in a timely manner,
her absences were not FMLA protected and that the Postal Service
was justified in considering these absences in making the decision
to terminate her employment.  It is further argued by the
Defendant that at least one of Robinson's previously approved
certifications was not valid during the time period in question.

    We have made the factual determination that Robinson did
not request FMLA leave for October 11 and 14, 2002.  Therefore,
our discussion pertains to the absences beginning October 19,
2002, and ending November 3, 2002.

    Before addressing the question of adequate notice, we
must determine whether the Plaintiff's certification for
depression was valid.  The Defendant argues that even if Robinson
followed the proper procedure in making her leave requests, her
leave certification for depression was only valid until October
15, 2002.  The Defendant contends that since the certification was
for "absence plus treatment," it was only valid for the days
specified in the certification.  However, the WH-380 Form provides

that the category of "absence plus treatment" includes not only the immediate absence and treatment but also "[includes] any subsequent treatment or period of incapacity relating to the same condition." (See Finding of Fact #9). The certification from Robinson's health care provider noted that depression can last for six to nine months and that Robinson might be advised to take FMLA leave on the days that she could not function due to her depression. As such, we conclude that the depression certification was valid after October 15, 2002, because the Postal Service was informed that Robinson may need more time off for her condition and "absence plus treatment" includes subsequent periods of incapacity.

We now turn to the adequacy of the notice given by Plaintiff. According to the medical certifications that Robinson provided, while she may need to take time off from work because of her conditions, the exact time Plaintiff would need was not foreseeable. Since absences were not foreseeable, Robinson was required to give the Postal Service notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). There is no requirement that an employee "expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). Once an employee informs the employer that leave is needed, "[t]he employer [is] expected to obtain any additional required information through informal means." *Id*. The employee is expected to furnish this information as soon as

practicable.  *Id*.  When an employee requests FMLA leave "the employer must, within a reasonable time thereafter – one or two business days if feasible, provide the employee with *written* notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004)(*quoting* 29 C.F.R. § 825.301(b)(1), (c))(internal quotations omitted)(emphasis added). This must happen "no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave."  29 C.F.R. § 825.301(c).

The Defendant contends that Robinson's notice was inadequate because she failed to indicate to the person taking her call the specific condition for which she was requesting leave. As a result, her requests were treated as new conditions and certification was requested.  The Defendant maintains that since certifications were not returned in a timely manner, the Postal Service was justified in considering the disputed dates when terminating the Plaintiff.  Robinson argues that her notice was adequate because she informed the Postal Service that she was requesting leave for an FMLA condition that was on file.  We find Nicka's testimony, that she told Robinson about specifying a condition number, credible.  However, the only notice to Robinson, concerning the procedures to follow when requesting leave for a previously certified FMLA condition, was in the letters requesting

certification for her various conditions.  These letters informed Robinson that once a certification had been approved, she was required to tell the person taking her call that the leave request was for a "FMLA [condition] ON FILE."  (See Finding of Fact #11).  This is the procedure that Robinson followed.

Nicka's verbal direction to Robinson, requiring her to provide condition numbers, does not satisfy 29 C.F.R. § 825.301, which requires written notice of expectations and consequences to the employee.  Thus, the Defendant cannot treat the Plaintiff's October and November absences as new conditions based on the her failure to specify a condition number when she requested leave. The Postal Service's written policy is such that the Defendant was put on notice of Robinson's request for FMLA leave for an approved condition when she informed the person taking her call that the leave request was for an "on file" condition.  Once the Plaintiff informed the Defendant of her need for FMLA leave, the Defendant should have inquired as to which condition she was referring.[3]

Having determined that the Plaintiff provided the Defendant with all the notice that was required under the circumstances of the instant case, we conclude that the Defendant violated Robinson's rights under the FMLA when the October and

---

[3] As the Defendant notes, a request for re-certification of an existing condition is allowed, 29 U.S.C. § 2613(e), but the Defendant never requested re-certification prior to terminating the Plaintiff.

November dates were included in the decision to terminate her employment.[4]

    B.  <u>Damages</u>

       The Plaintiff is seeking lost wages, interest, liquidated damages, and attorney's fees and costs.  Since the Defendant has violated 29 U.S.C. § 2615, Robinson is entitled to lost wages and interest.  29 U.S.C. § 2617(a)(1)(A)(i)(I) & (1)(A)(ii)("Any employer who violates section 2615 of this title shall be liable to any eligible employee affected for damages equal to the amount of any wages...denied or lost to such employee by reason of the violation; [and] the interest on the amount described in clause (i) calculated at the prevailing rate.").  The Plaintiff is entitled to liquidated damages unless the employer "proves to the satisfaction of the court that the act or omission which violated section 2615...was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615."  29 U.S.C. § 2617(1)(A)(iii).  The Defendant is also liable to Robinson for "reasonable attorney's fees...and other costs of the action."  29 U.S.C. § 2617(3).

---

[4] Since Plaintiff provided adequate notice to the Defendant, any failure on her part to provide new certification for the disputed dates is not material to a determination of liability.

Robinson is seeking back pay (lost wages) for the last Postal Service pay period of 2002, all of 2003 and pay periods one through twenty-three for 2004.  However, despite Plaintiff's assertion to the contrary, Defendant's exhibit #42 indicates that she was paid for the last pay period of 2002.  Thus, we will focus on 2003 and 2004 in our calculation.  Robinson argues that her lost wages should be calculated assuming that she worked all scheduled days during that time period.  The Defendant contends that we should take into consideration Robinson's extensive absenteeism during 2001 and 2002 which resulted in the Plaintiff earning far less during those years than she could have if she had worked all of her scheduled days.

In 2001, Robinson earned $19,920.  She earned $24,207.99 in 2002.  In total she earned $44,127.99.  We conclude that given Robinson's history of absenteeism, we cannot assume, as suggested by the Plaintiff, that she would have worked all of her scheduled days during 2003 and 2004.  We find it far more probable that had Robinson been in the employ of the Postal Service for 2003 and all of 2004, she would have earned the same amount of income during those years as she had in the preceding two years.  As a result, we conclude that Robinson is entitled to $41,292.97 in lost wages, which is the total amount that she earned during 2001 and 2002, less the $2835.02 Robinson earned at the Postal Service during the last two pay periods in 2004.

Under the Postal Services employment policies, Robinson had a duty to mitigate her damages should it be found that she is entitled to back pay. Robinson was not employed during the year following her termination. In the second year, she worked as a barmaid. Although her wages were not reported to the IRS, the Plaintiff's testimony reveals that she earned approximately $13,000 during that time period. As noted, other than her testimony, Plaintiff has offered no evidence to support her claim that she sought but was unable to obtain employment during the year following her termination. As a result, we conclude that Plaintiff could have earned at least $13,000 during the first year, especially since she had previously worked for the establishment that employed her. Thus, Plaintiff's back pay shall be reduced by $26,000, for a back pay total of $15,292.97.

The Defendant also contends that Robinson's damages award should be reduced by the amount of unemployment compensation she collected during the year following her termination. However, it appears that neither party has provided the court with evidence of the amount of unemployment compensation Plaintiff received. Although Plaintiff may be liable to repay this amount, we cannot deduct the unemployment compensation received by Plaintiff.[5]

---

[5] We are aware that during cross-examination of the Plaintiff the Defendant asked whether she had received $8,606 in unemployment compensation. (Tr. 79). Robinson testified that she was not sure of the exact figure. (*Id.*) Since neither party has provided the court with corroborating evidence as to the amount of compensation received, we cannot conclude that $8,606 is the amount that Plaintiff received. Since

As previously noted, Plaintiff is also entitled to
interest on her award.  Post-judgment interest is, of course,
governed by statute.  *See* 28 U.S.C. § 1961.  With regard to pre-
judgment interest, the parties have not indicated what they
consider the "prevailing rate" to be and the FMLA is silent on
this issue.  *See* 29 U.S.C. § 2617(a)(1)(A)(ii)(requiring interest
at the "prevailing rate.").  Two recent FMLA cases have
interpreted prevailing rate to mean that courts can look to
sources such as the "prime rate, the statutory post-judgment rate,
or the state statutory rate," to determine pre-judgment interest.
*Hite v. Vermeer Mfg. Co.*, 361 F.Supp.2d 935, 949 (S.D.Iowa 2005);
*see also Hall v., Meadwestvaco Corp.*, 2005 WL 1205554 at
*5(D.Mass. 2005).  We find these cases to be persuasive.

The current prime rate is 7.00% and the current post-
judgment rate, in accordance with 28 U.S.C. § 1961, is 4.36%.  *See*
http://www.federalreserve.gov/releases/h15/Current/ (Last visited
November 21, 2005).  The state statutory rate is 6.00%.  *See* 41
P.S. § 202.  We find that state statutory rate of 6.00% is
reasonable in this instance as it is between the post-judgment
rate and the prime rate.  Thus, prejudgment interest shall be
awarded from the effective date of Robinson's termination to the
date of judgment.  We have determined this amount of interest to

---

unemployment compensation has not been deducted from the back
pay award, Pennsylvania law requires that Plaintiff reimburse
the Commonwealth for whatever benefits she received.  *See* 43
P.S. § 874(3).

be $2752.74.  Further, post-judgement interest shall be award at a rate of 4.36%, computed daily and compounded annually until the date of payment, in accordance with § 1961.

We further conclude that the Plaintiff is not entitled to liquidated damages in this case.  Although Barbara Nicka's conversation with Robinson regarding condition numbers and her subsequent attempts to obtain certification from the Plaintiff do not serve to negate the Defendant's liability in this case, we find that the Defendant has demonstrated that Ms. Nicka's attempts to enforce the FMLA requirements were made in good faith.  Thus, the Defendant's reliance on the disputed days in terminating Plaintiff's employment was also in good faith.

Plaintiff is also entitled to an award of reasonable attorney's fees and costs.  Hopefully, the parties will agree on a figure for an award.  If not, Plaintiff's attorney may submit an application for attorney's fees and costs no later than 60 days hereof.

We will enter an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: November 22, 2005

17

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


LAURA C. ROBINSON,                  :
        Plaintiff
                                    :

        vs.                         :  CIVIL NO. 1:CV-04-0996

                                    :
JOHN E. POTTER, Postmaster
General, United States             :
Postal Service,
         Defendant                  :
```

## V E R D I C T

AND NOW, this 22nd day of November, 2005, a verdict is entered in favor of the Plaintiff, Laura Robinson, and against the Defendant, John E. Potter, Postmaster General of the United States Postal Service, in the sum of $18,045.71, which includes prejudgment interest at a rate of 6.00% from the effective date of the Plaintiff's termination, December 13, 2002, to the present date.  Post-judgement interest is awarded at a rate of 4.36% computed daily and compounded annually until the date of payment, in accordance with 28 U.S.C. § 1961.

The Clerk of Court is instructed to enter judgment in favor of the Plaintiff and against the Defendant in accordance with the above verdict.

The Clerk of Court shall close this file.


                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge